BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE RONALD D. REITZ, COUNTY COUNSEL, COUNTY OF SAN BERNARDINO, has requested an opinion on the following questions:
1. For purposes of making nexus grants from the Indian Gaming Special Distribution Fund to public agencies impacted by tribal gaming, what constitutes a "local government jurisdiction"?
2. What projects are eligible for the distribution of grants to public entities from the Indian Gaming Special Distribution Fund?
 CONCLUSIONS
1. For purposes of making nexus grants from the Indian Gaming Special Distribution Fund to public agencies impacted by tribal gaming, a "local government jurisdiction" refers to the geographical area over which a city or county exercises authority.
2. The projects that are eligible for the distribution of grants to public entities from the Indian Gaming Special Distribution Fund must involve law enforcement, fire services, emergency medical services, environmental impacts, water supplies, waste disposal, behavioral, health, planning and adjacent land uses, public health, roads, recreation and youth programs, or child care programs.
 ANALYSIS
California has entered into a number of compacts with certain Indian tribes relating to casino gaming operations. Pursuant to these compacts, the state has established an Indian Gaming Special Distribution Fund ("Fund") into which the tribes have made payments. The Fund is devoted to specified uses, one of which is to provide grants to cities, counties, and special districts to mitigate the impacts of tribal gaming. (Gov. Code, § 12012.85, subd. (b).)[1] The statute with which we are concerned here is section 12715, which provides in relevant part:
 "(a) The Controller, acting in consultation with the California Gambling Control Commission, shall divide the County Tribal Casino Account for each county that has gaming devices that are subject to an obligation to make contributions to the Indian Gaming Special Distribution Fund into a separate account for each tribe that operates a casino within the county. These accounts shall be known as Individual Tribal Casino Accounts, and funds may be released from these accounts to make grants selected by an Indian Gaming Local Community Benefit Committee pursuant to the method established by this section to local jurisdictions impacted by tribal casinos. Each Individual Tribal Casino Account shall be funded in proportion to the amount that each individual tribe paid in the prior fiscal year to the Indian Gaming Special Distribution Fund.
 "(b)(1) There is hereby created in each county in which Indian gaming is conducted an Indian Gaming Local Community Benefit Committee. The selection of all grants from each Individual Tribal Casino Account or County Tribal Casino Account shall be made by each county's Indian Gaming Local Community Benefit Committee. In selecting grants, the Indian Gaming Local Community Benefit Committee shall follow the priorities established in subdivision (g). . . .
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(c) Sixty percent of each individual tribal casino account shall be available for nexus grants on a yearly basis to cities and counties impacted by tribes that are paying into the Indian Gaming Special Distribution Fund, according to the four-part nexus test described in paragraph (1). Grant awards shall be selected by each county's Indian Gaming Local Community Benefit Committee and shall be administered by the county. Grants may be awarded on a multiyear basis, and these multiyear grants shall be accounted for in the grant process for each year.
 "(1) A nexus test based on the geographical proximity of a local government jurisdiction to an individual Indian land upon which a tribal casino is located shall be used by each county's Indian Gaming Local Community Benefit Committee to determine the relative priority for grants, using the following criteria:
 "(A) Whether the local government jurisdiction borders the Indian lands on all sides.
 "(B) Whether the local government jurisdiction partially borders Indian lands.
 "(C) Whether the local government jurisdiction maintains a highway, road, or other thoroughfare that is the predominant access route to a casino that is located within four miles.
 "(D) Whether all or a portion of the local government jurisdiction is located within four miles of a casino.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(d) Twenty percent of each Individual Tribal Casino Account shall be available for discretionary grants to local jurisdictions impacted by tribes that are paying into the Indian Gaming Special Distribution Fund. These discretionary grants shall be made available to all local jurisdictions in the county irrespective of any nexus to impacts from any particular tribal casino, as described in paragraph (1) of subdivision (c). Grant awards shall be selected by each county's Indian Gaming Local Community Benefit Committee and shall be administered by the county. Grants may be awarded on a multiyear basis, and these multiyear grants shall be accounted for in the grant process for each year.
 "(e)(1) Twenty percent of each Individual Tribal Casino Account shall be available for discretionary grants to local jurisdictions impacted by tribes that are not paying into the Indian Gaming Special Distribution Fund. These grants shall be made available to local jurisdictions in the county irrespective of any nexus to impacts from any particular tribal casino, as described in paragraph (1) of subdivision (c), and irrespective of whether the impacts presented are from a tribal casino that is not paying into the Indian Gaming Special Distribution Fund. Grant awards shall be selected by each county's Indian Gaming Local Community Benefit Committee and shall be administered by the county. Grants may be awarded on a multiyear basis, and these multiyear grants shall be accounted for in the grant process for each year.
 "(A) Grants awarded pursuant to this subdivision are limited to addressing service-oriented impacts and providing assistance with one-time large capital projects related to Indian gaming impacts.
 "(B) Grants shall be subject to the sole sponsorship of the tribe that pays into the Indian Gaming Special Distribution Fund and the recommendations of the Indian Gaming Local Community Benefit Committee for that county.
 "(2) If an eligible county does not have a tribal casino operated by a tribe that does not pay into the Indian Gaming Special Distribution Fund, the money available for discretionary grants under this subdivision shall be available for distribution pursuant to subdivision (d).
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(g) The following uses shall be the priorities for the receipt of grant money from Individual Tribal Casino Accounts: law enforcement, fire services, emergency medical services, environmental impacts, water supplies, waste disposal, behavioral, health, planning and adjacent land uses, public health, roads, recreation and youth programs, and child care programs.
 "(h) All grants from Individual Tribal Casino Accounts shall be made only upon the affirmative sponsorship of the tribe paying into the Indian Gaming Special Distribution Fund from whose Individual Tribal Casino Account the grant moneys are available for distribution. Tribal sponsorship shall confirm that the grant application has a reasonable relationship to a casino impact and satisfies at least one of the priorities listed in subdivision (g). . . .
 "(j)(1) Each county's Indian Gaming Local Community Benefit Committee shall submit to the Controller a list of approved projects for funding from Individual Tribal Casino Accounts. Upon receipt of this list, the Controller shall release the funds directly to the local government entities for which a grant has been approved by the committee.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The two questions presented focus on (1) the eligibility requirements for "nexus grants" distributed under section 12715, subdivision (c), and (2) the type of projects that are eligible to receive not only nexus grants but also "discretionary grants" distributed under section 12715, subdivisions (d) and (e).
1. "Local Government Jurisdiction"
The first question concerns the meaning of the term "local government jurisdiction" as used in section 12715, subdivision (c). In making nexus grants from the Fund to public agencies impacted by tribal gaming, what constitutes a "local government jurisdiction"? We conclude that the term refers to the geographical area over which a city or county exercises authority.
In examining the language of section 12715, we apply well recognized rules of statutory construction. The "fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (Day v. City of Fontana (2001) 25 Cal.4th 268,272.) The analysis starts by giving the words their usual and ordinary meaning. (Garcia v. McCutchen (1997) 16 Cal.4th 469,476.) "`Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' [Citation.]" (Reno v. Baird (1998) 18 Cal.4th 640,658.) A statute is to be interpreted in context (CaliforniaTeachers Assn. v. Governing Bd. of Rialto Unified School Dist.
(1997) 14 Cal.4th 627, 642); "`statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (Walnut CreekManor v. Fair Employment Housing Com. (1991) 54 Cal.3d 245,268.) Where the Legislature has supplied a definition for a term, "we must take it as we find it." (Adoption of Kelsey S. (1992)1 Cal.4th 816, 826; Delaney v. Superior Court (1990)50 Cal.3d 785, 804.)
Applying these rules of construction, we find that the term "local government jurisdiction" in section 12715 refers to the geographical area over which a city or county exercises authority. The nexus grants represent 60 percent of each individual tribal account and "shall be available . . . on a yearly basis to cities and counties impacted by tribes that are paying into the [Fund]." (§ 12715, subd. (c).) Hence, nexus grants are available only for cities and counties and not for other public entities such as special districts.
Our construction of the language of subdivision (c) of section 12715 makes it internally consistent. In contrast, the Legislature has defined the term "local jurisdiction" to include special districts: "`Local jurisdiction' means any city, county, or special district." (§ 12712, subd. (c).) We accord significance to the word "government" in the phrase "local government jurisdiction" consistent with the remainder of section 12715, subdivision (c), in limiting eligibility for nexus grants to cites and counties.
Next, we note that a nexus grant is "based on the geographical proximity of a local government jurisdiction to an individual Indian land upon which a tribal casino is located. . . ." (§ 12715, subd. (c)(1).) The determining geographical factors are whether the city or county (1) "borders" the Indian lands, (2) "partially borders" the Indian lands, (3) "maintains a highway . . . that is the predominant access route to a casino that is located within four miles" of the city or county, or (4) "is located within four miles of a casino." (§ 12715, subd. (c)(1)(A)-(D).) In this context, the term "jurisdiction" refers to the geographical area over which a city or county exercises authority. "Jurisdiction" may be defined as "[a] government's general power to exercise authority over all persons and things within its territory" or "a geographic area within which political or judicial authority may be exercised." (Black's Law Dict. (7th ed. 1999) p. 855, col. 1.)
We conclude in answer to the first question that, for purposes of making nexus grants from the Fund to public agencies impacted by tribal gaming, a "local government jurisdiction" is the geographical area over which a city or county exercises authority.
2. Eligible Projects
The second question presented concerns the types of projects that are eligible to receive nexus grants (§ 12715, subd. (c)) and discretionary grants (§ 12715, subds. (d), (e)). We conclude that the types of eligible projects are as stated in subdivision (g) of section 12715.
First, as indicated in answer to the first question, the nexus grants represent 60 percent of a tribal account and are dependent upon geographical proximity of a city or county to tribal lands on which a casino is located. (§ 12715, subd. (c).) The remaining 40 percent of each tribal account is available for discretionary grants, to be awarded "irrespective of any nexus to impacts." (§ 12715, subds. (d), (e).) Of this money, half (representing 20 percent of the total amount) is available only for cities, counties, and special districts where the impact is by tribes paying into the Fund. (§ 12715, subd. (d).) The other half (representing the remaining 20 percent of the total amount) is available for impacts by tribes paying into the Fund or by tribes that are not paying into the Fund, but only if the grants address "service-oriented impacts and provid[e] assistance with one-time large capital projects related to Indian gaming impacts." (§ 12715, subd. (e)(1).)[2] Significantly, each nexus grant and discretionary grant must have the affirmative sponsorship of the tribe from whose individual tribal account the allocation is made. (§ 12715, subd. (h).)[3]
As for the criteria to be followed in selecting projects for nexus grants and discretionary grants, subdivision (b)(1) of section 12715 requires: "In selecting grants, the Indian Gaming Local Community Benefit Committee shall follow the priorities established in subdivision (g)." Subdivision (g), in turn, states as follows:
 "The following uses shall be priorities for the receipt of grant money from Individual Tribal Casino Accounts: law enforcement, fire services, emergency medical services, environmental impacts, water supplies, waste disposal, behavioral, health, planning and adjacent land uses, public health, roads, recreation and youth programs, and child care programs."
Subdivision (g) does not establish any rank or precedence among these "priority" uses. Neither the plain language of the statute nor its legislative history gives any indication, for example, that a project involving "law enforcement" is to be favored over one establishing "child care programs." Instead, as long as a project supports one or more of the uses listed, it is eligible for a nexus grant or a discretionary grant. (§ 12715, subd. (h).) The only additional limitation on these criteria involves a discretionary grant to a local jurisdiction under section 12715, subdivision (e)(1). These grants "are limited to addressing service-oriented impacts and providing assistance with one-time large capital projects related to Indian gaming impacts." (§ 12715, subd. (e)(1)(A).)
We conclude that the projects that are eligible for the distribution of grants to public entities from the Fund must involve at least one of the statutory priorities set forth in section 12715, subdivision (g), namely, "law enforcement, fire services, emergency medical services, environmental impacts, water supplies, waste disposal, behavioral, health, planning and adjacent land uses, public health, roads, recreation and youth programs, or child care programs."
[1] All further references to the Government Code are by section number only.
[2] Accordingly, a city or county that is eligible for a nexus grant is also eligible for a discretionary grant. A city, county, or special district that is impacted by a tribal casino that is paying into the Fund is eligible for projects under subdivision (e) ["grants shall be made available . . . irrespective of whether the impacts presented are from a tribal casino that is not paying . . ."] as well as subdivision (d) of section 12715. If a county does not have a non-paying casino, the money available for discretionary grants under section 12715, subdivision (e)(1), remains available for grants associated with paying casinos, but is freed of the special limitations imposed by subparagraphs (A) and (B) of subdivision (e)(1). (See § 12715, subd. (e)(2).)
[3] For grants made under section 12715, subdivision (e)(1), to a local jurisdiction affected by a non-paying tribe, the grant must be sponsored by a tribe that does pay into the Fund. (§ 12715, subd. (e)(1)(B).)